UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 15-21732-CIV-LENARD/GOODMAN

BONNIE J. BROWN,

    Plaintiff,

v.

NCL (BAHAMAS), LTD.,

    Defendant.
_____/

## ORDER CONCERNING PRODUCTION OF SURVEILLANCE VIDEO

The discovery dispute at issue here concerns a surveillance video depicting Plaintiff, Bonnie Brown, another passenger (and perhaps others) aboard a cruise ship operated by Defendant NCL (BAHAMAS), Ltd. Defendant NCL wants a protective order, allowing it to postpone disclosure of the video until Brown completes her direct testimony at her deposition. Brown wants the video turned over before her deposition begins so that she may review it and be better prepared to answer deposition questions about the alleged assault which she suffered in her cabin during the cruise.

Due to the unique circumstances present here, the Undersigned **grants** the request for a protective order. NCL may take Brown's deposition without first producing the video. Once the direct examination of Brown is completed, NCL shall produce (at the deposition) the video. Brown will have the opportunity to review the

video and she will then be further examined by her own counsel (if he wishes to do so) and by NCL's counsel (if she wants to conduct redirect).

The circumstances and reasons for this ruling are outlined below.

**Facts**

Brown filed this maritime action for negligence, alleging that she sustained injuries as a result of an alleged assault by another passenger aboard NCL's vessel, *Star*. The Complaint alleges the following:

Brown left a party in the ship's nightclub at approximately midnight on January 4, 2014. As she approached her room, Brown saw a shirtless, shoeless man passed out in the hallway a few doors from her cabin. She and two other passengers tried to wake the man to see if he needed assistance. He was able to sit up and said he was locked out of his room. The other two passengers left and returned to their cabin. The man told Brown that he had 12 shots of tequila. Brown became concerned for his safety when his head slumped down like he was falling asleep. She asked additional questions, such as where his parents were and where his cabin was located, but he could not help himself.

At that point, a ship security officer appeared, approached Brown and the intoxicated young man, advised that they had a noise complaint from the adjacent cabin and told them to be quiet. Brown tried to explain that she and the young man were not together and that he was a complete stranger who she found passed out in the hallway. She also told the security officer that she was concerned about the amount of liquor the

man had consumed, that he looked too young to be that intoxicated and warned that alcohol poisoning could be an extremely serious situation.

The security guard refused her request to help get the intoxicated young man back into his locked room. The guard told her that she needed to go to the front desk and obtain a new key for the stranger. The guard left Brown alone with the young man and provided no help to the man. The man said he was able to rise and that he wanted to enter Brown's cabin. She allowed him into her room, gave him some food and water she had brought back to the room and instructed him to sit on the couch.

Brown advised (apparently on the telephone, but the complaint does not clearly say this) the front desk of the situation and was told someone would be sent to her room immediately. After learning the intoxicated man's name, Brown learned from the front desk attendant that he was a guest in a nearby cabin.

The intoxicated young man started to unzip his pants and began making sexually explicit comments. Brown opened the door, saw a person she believed to be a front desk attendant approaching. This other person opened the adjacent cabin door but he refused to hold open the door so that Brown could get her keys and the drunk young man. The front desk attendant left, abandoning her to deal with the drunken passenger on her own.

After receiving some additional and unwanted sexual advances which she rebuffed, Brown escorted the intoxicated man to his cabin. Once inside, he rushed her,

3

wrapping his arms around her chest, pinning her arms to the side. Brown lost her balance, and her head slammed into the corner of the television shelf. She screamed and her vision went black. The next thing Brown remembered was being in her cabin on her bed, throwing up in the wastebasket. Her foot was bleeding, her head was throbbing, she was nauseous, she was vomiting, and she felt confused.

She called the front desk for help. The same security officer who previously came to her cabin but who refused to open the intoxicated passenger's room arrived again. He asked Brown about the young man's location, and Brown said he was in his own room. At that point, the security officer opened the room with a master key.

After Brown filed her lawsuit, she served a request for production of documents, including surveillance videos. NCL objects to producing the video to Brown until after direct examination at her deposition. NCL contends that Brown will tailor her testimony to fit the video if she is permitted to view it before providing deposition question answers.

At the discovery hearing, Brown's attorney explained that she suffered traumatic brain injury and therefore has "memory issues."

NCL explained that the video only shows events in the corridor -- not in the cabins, where the sexual intimidation and attacks occurred. In addition, NCL advised that Brown has already given three different versions of the events: (1) in a written

statement given the day of the incident, (2) in the Complaint itself, and (3) in interrogatory answers.

Brown contends that her memory loss is a reason why she should be able to see the surveillance video before giving deposition testimony. NCL, on the other hand, argues that her memory loss is precisely why she should *not* have access to the video before her deposition. Given that Brown has memory issues, NCL notes, she is likely to simply adopt (either intentionally or subconsciously) the events depicted in the video as her own memory of what happened.

NCL also took the position that the video is protected work product, but this is inherently inconsistent with its other position -- of being willing to turn over the video immediately after Brown gives direct deposition testimony. Given this scenario, the Undersigned assumes that NCL has abandoned the work product argument. If it has not, then it has waived it by agreeing to produce a purported work product material.

**Applicable Legal Principles & Analysis**

The Court has the authority, under Federal Rules of Civil Procedure 26(c) and (d), to enter a protective order allowing a party like NCL to withhold the surveillance video until after the direct examination at Brown's deposition. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."). The general rule, however, is that parties may use discovery methods in any sequence.

Courts in this district typically evaluate this type of discovery timing request to see if "appropriate circumstances" or "unique circumstances" are present. If they are, then courts do not hesitate to temporarily delay the production of a surveillance video. *See, e.g., Ordonez v. NCL (Bahamas) Ltd.,* No. 13-24262-CIV, ECF No. 28 (S.D. Fla. Mar. 7, 2014) (finding that appropriate circumstances existed to allow the defendant to withhold video footage because, "due to the unique circumstances of this case, Defendant could be prejudiced"). *See also Bolitho v. Home Depot*, No. 10-60053-CIV, 2010 WL 2639639 (S.D. Fla. June 3, 2010) (delaying production of video until after plaintiff's deposition).

Determining whether unique circumstances exist is, of course, a fact-driven, case-specific assessment. The mere fact that the Undersigned previously denied a similar discovery sequence request from the very same defendant cruise ship operator in another case does not mean that a similar ruling should result here. *See Terman v. NCL (BAHAMAS), LTD.,* No. 14-24727-CV, 2015 WL 3892508 (S.D. Fla. June 16, 2015*)* (denying request to establish specific discovery sequence after noting that the cruise ship operator failed to demonstrate risk of prejudice and specifically pointing out that there were not significant differences between plaintiff's one-sentence written statement and the allegations in the complaint).

The Undersigned concludes that NCL has, unlike in *Terman*, sufficiently demonstrated the presence of unique circumstances which generate a concern that

6

Brown may well tailor her testimony. Unlike the *Terman* scenario, where NCL simply had a vague hunch that the passenger plaintiff might tailor deposition testimony, NCL's presentation here is fact-specific and far from wholly conclusory. First, Brown has already provided different versions of the critical events. Second, assuming that she has memory problems, the Undersigned is surely sympathetic to her plight but it is this very status which creates the additional concern that her testimony will not be sufficiently independent if she first views the video.

For these fact-specific reasons, the Undersigned is entering a protective order permitting NCL to withhold the surveillance video until after Brown testifies on direct at her deposition. She may then view the video before being asked additional questions by her own attorney or by NCL's attorney. *Parks v. NCL (BAHAMAS), Ltd.*, 285 F.R.D. 674, 675 (S.D. Fla. 2012) (agreeing with NCL that "plaintiff should be required to give her deposition testimony based on her own independent recollection of the incident, without being refreshed in any way by the videotape").[1]

**DONE AND ORDERED** in Chambers, at Miami, Florida, October 30, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

---

[1] According to a Court-required notice filed on CM/ECF, none of the security guards or front desk employees who are pictured in the video before Brown was allegedly attacked have seen the video either. [ECF No. 29].

7

<u>Copies furnished to</u>:
The Honorable Joan A. Lenard
All counsel of record